**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.:**

MICHELLE FERGUSON

    Plaintiff,

v.

NOVA SOUTHEASTERN UNIVERSITY
a Florida Not For Profit Corporation

    Defendant.
_____/

## COMPLAINT

Plaintiff, MICHELLE FERGUSON (hereinafter, "FERGUSON" or "Plaintiff"), by and through her undersigned attorney, hereby files this Complaint against NOVA SOUTHEASTERN UNIVERSITY (hereinafter "NSU" or "Defendant") and says:

## JURISDICTION AND VENUE

1. This is an action brought against Defendant pursuant to Family and Medical Leave Act ("FMLA"), Florida Private Whistleblower Protection Act ("FWA"), Florida Statutes §§448.101-448.105, the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01 *et seq.* (2017), and the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3. Venue is proper in the Southern District of Florida because Plaintiff was employed by Defendant in this District; because Defendant, at all material times, conducted and continues to conduct business in the Southern District of Florida; because the acts that give rise

1

to Plaintiff's claims occurred within the Southern District of Florida; pursuant to 28 U.S.C. §§ 1391(b) and (c); and because Defendant is subject to personal jurisdiction herein.

4. All conditions precedent to this action have been performed or waived.

## **PARTIES**

5. Plaintiff is a member of a class protected under the FCRA and ADAAA because the terms, conditions, and privileges of her employment were altered because of her disability/handicap. Further, Plaintiff was denied a request for reasonable accommodations.

6. Plaintiff is a citizen and resident of the Southern District of Florida, over the age of eighteen years and otherwise *sui juris*. During all times relevant to this Complaint, Plaintiff worked for Defendant as an Associate Professor in NSU's Ron and Kathy Assaf College of Nursing in Broward County, Florida.

7. Defendant is a Florida Not For Profit Corporation organized and existing under and by virtue of the laws of Florida and registered to do business within Florida, with its principal place of business in Broward County, Florida. Defendant has, at all times material hereto, conducted substantial and continuous business within the Southern District of Florida, and is subject to the laws of the United States and the State of Florida.

8. Defendant has, at all times material, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with the FCRA (Fla. Stat. § 760.02(7)) and the ADAAA.

9. At all times relevant hereto, Defendant was also an employer as defined in Fla. Stat. §448.101 in that Defendant was a private corporation that employed ten or more persons.

10. Defendant, upon knowledge and belief, employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2019 or 2020, and therefore is a covered employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

11. By May 2019, Plaintiff had been employed by Defendant for over 12 months, and she had performed at least 1,250 hours of service for Defendant during the previous 12-month period. Plaintiff was therefore an eligible employee under the FMLA, 29 U.S.C. § 2611(2).

12. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination ("Charge") against Defendant with the Equal Employment Opportunity Commission ("EEOC") which was dually filed with the Florida Commission on Human Relations ("FCHR").

13. Plaintiff's Charge was filed on or about October 29, 2019, which was no more than 300 days after the last discriminatory event occurred, to wit: May 23, 2019.

14. Plaintiff was issued a Dismissal and Notice of Right to Sue on or after June 18, 2020. This suit is filed in accordance with that Notice and within the applicable 90-day time limitation (a copy of the Notice is attached hereto as Exhibit A).

**GENERAL ALLEGATIONS**

15. Plaintiff worked for Defendant from May 2018 until her termination on or about May 23, 2019, as an Associate Professor in NSU's Ron and Kathy Assaf College of Nursing.

16. Since Plaintiff started her employment with NSU, she rarely received the needed and promised professional support and Plaintiff rarely received the respect she deserved, which caused Plaintiff's health condition to be at risk.

17. Plaintiff attended a meeting in August 2018, during which Plaintiff's assigned mentor, Dr. Howard, disclosed private disciplinary information of a faculty member, who was not present, in the presence of nonessential employees.

18. Plaintiff reasonably believed that Dr. Howard's disclosure of said information was in violation of NSU's policies, so Plaintiff reported Dr. Howard's disclosure to Dean Rutherford of the College of Nursing.

19. After Plaintiff's report of Dr. Howard's inappropriate disclosure, Dr. Howard's interaction with Plaintiff became hostile. Specifically, Dr. Howard withheld mentoring support, failed to cooperate with Plaintiff's work efforts, and verbally harassed Plaintiff on a regular basis.

20. Due to the stress caused by Dr. Howard, Plaintiff requested to switch a mentor and voiced her concerns with Dean Rutherford, after which, however, Plaintiff was advised that she was the problem.

21. In November 2018, Plaintiff was directed to hire a family nurse practitioner for a dental clinic, for which Plaintiff recruited a qualified Filipino male nurse practitioner, who was not particularly muscular, had tattoos on his face and normally wore makeup.

22. Plaintiff submitted the qualification information of the male nurse practitioner for approval, after which he was hired to perform in-house tasks with Plaintiff.

23. On a day when the male nurse practitioner was working in the clinic, Plaintiff introduced him to meet with Dean Rutherford and Dr. Holland for the first time.

24. Shortly after the in person meeting for the male nurse practitioner with Dean Rutherford and Dr. Holland, Plaintiff was advised that the position had to be offered to Dr. Koplow, a white female, who is allegedly "soft spoken and calm."

25. The male nurse practitioner was therefore let go.

26. Dr. Koplow was not qualified for the position and was never hired, with the position remaining vacant as of Plaintiff's termination, despite of NSU's apparent urgency to fill that position.

27. Plaintiff voiced her objections to the termination of the male nurse practitioner because she reasonably believed that NSU's conduct of terminating the male nurse practitioner was discriminatory on the basis of the nurse practitioner's race and gender, in violation of the relevant statutes (Title VII and FCRA).

28. On or about December 12, 2018, Plaintiff was requested to listen to an applicant's telephone interview, which was surreptitiously recorded, to help make a decision on the applicant's admission.

29. Plaintiff reasonably believed that recording a telephone conversation surreptitiously was illegal in Florida (Fla. Stat. §934.03), so she refused to listen to the recording and voiced her concerns to Dean Rutherford, who acknowledged the existence of the recording and encouraged the use of it.

30. Plaintiff's objections to the incident regarding the male nurse practitioner's termination and the incident on the surreptitious recording were not taken well, for which Plaintiff received worse verbal harassment from Dr. Howard and NSU gradually stripped Plaintiff with her responsibilities and cut off communication to her.

31. NSU's reactions to Plaintiff's previous objections caused Plaintiff severe emotional distress and physical hardship.

32. On or about January 29, 2019, Plaintiff was taken from her place of work to the nearest emergency department due to extreme high blood pressure, facial numbness, and chest pains.

33. As a result of uncontrolled hypertension for 3 weeks, Plaintiff was forced to be out on leave, when Plaintiff was assigned a cardiologists, and was placed on 2 antihypertensives.

34. Plaintiff returned to full duty on February 12, 2019, only to find out that she was shut off from communication from anyone in the College on almost anything, except for tasks to be completed for NSU's accreditation.

35. The accreditation team found one compliance concern with NSU, which was wrongly blamed on Plaintiff.

36. Soon afterwards, NSU rescinded its approval for Plaintiff to attend a major nursing organization's annual conference, without explanation and without reimbursing Plaintiff for the money she had already invested in preparation for the conference.

37. Unable to improve her working conditions on her own, Plaintiff officially complained to NSU's Human Resources on March 19, 2019, regarding her previous objections to the discriminatory practice regarding the male nurse practitioner and the illegal recording of the telephone interview, together with the harassment and the isolation Plaintiff had received in retaliation of her objections.

38. Within two weeks of Plaintiff's official complaint to Human Resources, on April 1, 2019, Plaintiff was advised that her position would be eliminated effective July 1, 2019, after which her salary would be reduced, and Plaintiff was required to immediately evacuate her office and move to a cubicle.

39. A week later, on April 8, 2019, Plaintiff was asked to sign a release to enable Human Resource to investigate Plaintiff's prior employment history for potential wrongdoings.

40. Meanwhile, Plaintiff's health condition became exacerbated, so Plaintiff applied for leave under the FMLA on April 9, 2019, which was approved.

41. Plaintiff was scheduled to take leave under the FMLA from April 9, 2019 through May 31, 2019.

42. Prior to May 31, 2019, Plaintiff was cleared to go back to work with accommodations, including but not limited to, single task, reduced commute, quiet and spacious work space, and occasionally working from home.

43. Plaintiff reached out to the liaison of NSU's Human Resources and requested to go back to work with accommodations.

44. Plaintiff never received a decision from Human Resources on her request to go back to work with accommodations but received a notice for a meeting with Dean Rutherford to be held on May 23, 2019, during which Plaintiff was terminated.

45. The reasons Defendant provided for Plaintiff's termination are pretextual.

46. Even if Defendant had a legitimate, non-discriminatory reason, Plaintiff's disability was, at minimum, a motivating factor in Defendant's decision for her termination[1].

47. Prior to her termination, Plaintiff was unaware of any performance deficiencies and she had not been previously disciplined.

48. Plaintiff has retained the undersigned firm to prosecute this action on her behalf and has agreed to pay it a reasonable fee for its services.

49. Plaintiff is entitled to her reasonable attorneys' fees and costs if she is the prevailing party in this action.

---

[1] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

## COUNT I: DISABILITY DISCRIMINATION (ADA AND ADAAA)

50. Plaintiff re-alleges and re-avers paragraphs 1 – 49 as fully set forth herein.

51. Plaintiff is a person with a disability as that term is defined under the ADAAA in that she was suffering from a series of health issues such as extreme high blood pressure, facial numbness, chest pains, and uncontrolled hypertension, which substantially limits her ability to perform at least one major life function, to wit: standing, stooping, bending, etc. without pain.

52. Plaintiff is, and at all times was, qualified to perform the essential functions of her job as an Associate Professor, with the proposed reasonable accommodations in that she was hired for the position and performed this position satisfactorily for the entirety of her employment.

53. Plaintiff is therefore a "qualified individual" as that term is defined in the Americans with Disabilities Act, as amended ("ADAAA") § 101(8) (42 U.S.C. § 12111(8)).

54. Plaintiff was able to perform the essential functions with accommodations, including but not limited to, single task, reduced commute, quiet and spacious work space, and occasionally working from home.

55. The requested accommodations would not have caused an undue burden to Defendant since Defendant had enough work space for Plaintiff and Plaintiff was able to perform certain responsibilities from home.

56. Title I of the ADAAA prohibits employers from taking adverse employment action against an employee as a result of her actual disability or record of disability and further requires employers to reasonably accommodate the actual or recorded disabilities.

57. Defendant discriminated against Plaintiff for her disability because Defendant gradually stripped Plaintiff's responsibilities after Plaintiff started to show symptoms of her

health issues at work, eliminated Plaintiff's position with a reduced pay after Plaintiff was back from leave in March 2019 and eventually terminated Plaintiff after she was cleared to come back to work with accommodations in May 2019.

58. Had Plaintiff not been disabled, she would not have suffered this adverse employment action.

59. Defendant's bases for terminating Plaintiff, if any, are pretextual. Had Defendant properly accommodated Plaintiff, Plaintiff could have performed the essential functions of her position.

60. Even if Defendant could assert legitimate reasons for its decision to terminate Plaintiff, Plaintiff's disability was, at minimum, a motivating factor[2] in Defendant's decision to terminate her employment.

61. As a result of the discriminatory conduct to which Plaintiff was subjected, Plaintiff has experienced, and will continue to experience, significant financial and economic loss. To that end, Plaintiff demands compensation for her back wages, front pay, compensatory and punitive damages, and any other remuneration permitted under the law.

62. Plaintiff further seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff MICHELLE FERGUSON requests judgment as follows:

 a) an award of economic damages including lost wages, back pay, interest, front pay, and the value and/or economic impact of lost benefits;

 b) compensatory damages;

 c) punitive damages;

 d) attorney's fees and costs; and

 e) any other award this Court deems necessary.

---

[2] Plaintiff explicitly reserves the right to argue a mixed-motive standard of review applies to her claims.

## COUNT II: FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE ADA AND ADAAA

63.  Plaintiff re-alleges and re-avers paragraphs 1 – 49 as fully set forth herein.

64.  Plaintiff is a person with a disability as that term is defined under the ADAAA in that she was suffering from a series of issues such as extreme high blood pressure, facial numbness, chest pains, and uncontrolled hypertension, which substantially limits her ability to perform at least one major life function, to wit: standing, stooping, bending, etc. without pain.

65.  Plaintiff is, and at all times was, qualified to perform the essential functions of her job as an Associate Professor, with the proposed reasonable accommodations, in that she was hired for the position and performed this position satisfactorily for the entirety of her employment.

66.  Plaintiff is therefore a "qualified individual" as that term is defined in the Americans with Disabilities Act Amendments Act ("ADAAA") § 101(8) (42 U.S.C. § 12111(8)).

67.  Plaintiff was able to perform the essential functions with accommodations, including but not limited to, single task, reduced commute, quiet and spacious work space, and occasionally working from home.

68.  Plaintiff reached out to the liaison of NSU's Human Resources and requested aforementioned reasonable accommodations when she was cleared to go back to work.

69.  Plaintiff's request for accommodations was reasonable and would not have caused Defendant undue hardship because Defendant had enough work space for Plaintiff and Plaintiff was able to perform certain responsibilities from home.

70.  Defendant failed to provide Plaintiff with a reasonable accommodation as that term is defined in the ADAAA, § 101(9).

71. Defendant refused to participate in the interactive process and terminated Plaintiff soon after she requested said accommodations.

72. As a result of Defendant's actions, Plaintiff has suffered damages by way of lost wages and benefits, attorney's fees, etc.

WHEREFORE, Plaintiff MICHELLE FERGUSON requests judgment as follows:

    a) an award of economic damages including lost wages, back pay, interest, front pay, and the value and/or economic impact of lost benefits;

    b) compensatory damages;

    c) punitive damages;

    d) attorney's fees and costs; and

    e) any other award this Court deems necessary.

## **COUNT III: HANDICAP/DISABILTY DISCRIMINATION (FCRA)**

73. Plaintiff re-alleges and re-avers paragraphs 1 – 49 as fully set forth herein.

74. Section 760.10 of the FCRA states in relevant part:

> (1) it is unlawful employment practice for an employer:
>   (a) to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, natural origin, age, handicap, or marital status.

75. The FCRA accordingly prohibits employers from taking adverse employment action against an employee as a result of her actual handicap/disability and/or record of having such handicap(s)/disability/disabilities.

76. The adverse and disparate treatment to which Plaintiff was subjected by Defendant, including but not limited to, her demotion and her termination, as set forth above, was the direct and proximate result of Plaintiff's actual handicap(s)/disability/disabilities, which

substantially limited her in one or more major life activities, and/or Plaintiff's record of having such handicap(s)/disability/disabilities.

77.     Defendant gradually stripped Plaintiff of her responsibilities after Plaintiff started to show symptoms of her health issues at work, eliminated Plaintiff's position with a reduced pay after Plaintiff was back from leave due to her health conditions in March 2019 and eventually terminated Plaintiff after she was cleared to come back to work with accommodations in May 2019.

78.     There were no valid, legal reasons for the series of adverse treatment Plaintiff received after her health issues started to become visible at work.

79.     Even if Defendant could assert legitimate reasons for its adverse and disparate treatment of Plaintiff, which it could not, Plaintiff's actual handicap(s)/disability/disabilities and/or Plaintiff's record of having such a handicap/disability/disabilities were, at minimum, motivating factors[3] for Defendant's termination of Plaintiff's employment.

80.     As a result of the discriminatory conduct to which Plaintiff was subjected, Plaintiff has experienced, and will continue to experience, significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced, and will continue to experience, emotional anguish, pain and suffering and loss of dignity damages. Plaintiff accordingly demands lost wages, back pay, interest, front pay (or reinstatement), the value and/or economic impact of lost benefits/seniority, and compensatory damages.

81.     Plaintiff further seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff MICHELLE FERGUSON requests judgment as follows:

---

[3] Plaintiff explicitly reserves the right to argue a mixed-motive standard of review applies to her claims.

    a)  an award of economic damages including lost wages, back pay, interest, front pay, and the value and/or economic impact of lost benefits;

    b)  compensatory damages;

    c)  attorney's fees and costs; and

    d)  any other award this Court deems necessary.

## COUNT IV: FAILURE TO ACCOMMODATE IN VIOLATION OF THE FCRA

82. Plaintiff re-alleges and re-avers paragraphs 1 – 49 as fully set forth herein.

83. Section 760.10 of the FCRA states in relevant part:

> (1) it is unlawful employment practice for an employer:
> (a) to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, natural origin, age, handicap, or marital status.

84. The FCRA accordingly requires employers to reasonably accommodate the actual handicaps/disabilities and/or records of such handicaps/disabilities of their employees.

85. Prior to May 31, 2019, when Plaintiff was cleared to go back to work with accommodations, including but not limited to, single task, reduced commute, quiet and spacious work space, and occasionally working from home, Plaintiff timely reached out to NSU's Human Resources to request said accommodations.

86. NSU never made a decision on Plaintiff's request for accommodations but scheduled a meeting for Plaintiff with Dean Rutherford, during which Plaintiff's employment with NSU was terminated.

87. Plaintiff's termination, as set forth above, was a denial of Plaintiff's reasonable accommodation request, which was the direct and proximate result of Plaintiff's actual handicap(s)/disability/disabilities.

88. Defendant failed/refused to reasonably accommodate Plaintiff's actual handicap(s)/disability/disabilities as required by law, leading to Plaintiff's termination, despite being presented with a request for reasonable accommodations by Plaintiff.

89. Plaintiff's request would not have imposed an undue burden on Defendant because Defendant had enough work space for Plaintiff and Plaintiff was able to perform certain responsibilities from home.

90. The requested accommodations would have enabled Plaintiff to perform the essential functions of her position.

91. Defendant's reason(s) for failing to address Plaintiff's request for accommodations, if any, are pretextual.

92. Even if Defendant could assert legitimate reasons for its failure to accommodate Plaintiff, Plaintiff's disability and/or record of having such a handicap/disability/disabilities were, at minimum, motivating factors[4] for Defendant's failure to accommodate.

93. As a result of Defendant's failure/refusal to accommodate Plaintiff, Plaintiff has experienced, and will continue to experience, significant financial and economic loss in the form of lost wages and lost benefits. Plaintiff has also experienced, and will continue to experience, emotional anguish, pain and suffering and loss of dignity damages. Plaintiff accordingly demands lost wages, back pay, interest, front pay (or reinstatement), the value and/or economic impact of lost benefits/seniority, and compensatory damages.

94. Plaintiff further seeks her attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff MICHELLE FERGUSON requests judgment as follows:

---

[4] Plaintiff explicitly reserves the right to argue a mixed-motive standard of review applies to her claims.

    a) an award of economic damages including lost wages, back pay, interest, front pay, and the value and/or economic impact of lost benefits;

    b) compensatory damages;

    c) punitive damages;

    d) attorney's fees and costs; and

    e) any other award this Court deems necessary.

### COUNT V – PRIVATE WHISTLEBLOWER PROTECTION ACT

95. Plaintiff re-alleges and re-avers paragraphs 1 – 49 as fully set forth herein.

96. This is an action for damages under the Private Whistleblower Protection Act, pursuant to Florida Statutes §§448.101 – 448.105, in taking retaliatory personnel action against Plaintiff for objecting to and/or refusing to participate in violations of Federal and Florida statutes.

97. Plaintiff objected to Defendant's discriminatory termination of the male nurse practitioner based on his gender and race, which Plaintiff reasonably believed was a violation of the Title VII and the FCRA.

98. Plaintiff refused to participate in Defendant's utilizing a surreptitious recording of an applicant's telephone interview, which Plaintiff reasonably believed was a violation of Fla. Stat. §934.03.

99. Defendant, through Dean Rutherford, and other staff members, ignored Plaintiff's objections and/or refusal to participate in Defendant's violations of Federal and Florida statutes, and eventually terminated Plaintiff.

100. As a direct result of Plaintiff's refusal to participate in Defendant's violations of Federal and Florida statutes, Plaintiff was isolated, demoted and eventually terminated.

101. During her employment with Defendant, Plaintiff had no reprimands, verbal or written, in her employee file prior to her objections and/or refusal to participate in Defendant's violations of Federal and Florida statutes.

102. Under the Private Whistleblower Protection Act, Plaintiff is protected from adverse employment action against her for objecting to and/or refusing to participate in violations of Federal and Florida statutes.

103. By reason of Defendant's effective wrongful discharge of Plaintiff, Plaintiff has been damaged in that Plaintiff has suffered lost wages, benefits, and has suffered emotional distress.

104. Defendant's conduct in wrongfully discharging Plaintiff was willful, wanton, and in reckless disregard of Plaintiff's rights under Florida's Private Whistleblower Protection Act.

WHEREFORE, Plaintiff MICHELLE FERGUSON requests judgment as follows:

    a. Compensation to Plaintiff for lost wages, benefits, other remuneration pursuant to Fla. Stat. §448.103(2)(d);

    b. Reinstatement to the same or an equivalent position at the rate of pay and with the full benefits before the retaliatory personnel action pursuant to Fla. Stat. §448.103(2)(b)-(c); or in lieu of reinstatement, front pay;

    c. Assessment against Defendant of reasonable costs and attorney's fees for this action pursuant to Fla. Stat. §448.104; and

    d. Such other and further relief as the Court deems just and proper.

### COUNT VI – VIOLATION OF THE FMLA
### (RETALIATION)

105. Plaintiff re-alleges and re-avers paragraphs 1 – 49 as fully set forth herein.

106. Plaintiff was eligible for FMLA leave to care for her own serious medical conditions pursuant to 29 U.S.C. § 2612(a)(1)(D).

107. Defendant is a covered employer as defined by 29 U.S.C § 2611(4)(A)(i) in that, upon knowledge and belief, Defendant employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2020 or 2019.

108. Due to her exacerbating health conditions, Plaintiff requested leave under the FMLA on April 9, 2019, which was approved.

109. Plaintiff was scheduled to take leave under the FMLA from April 9, 2019 through May 31, 2019.

110. Prior to May 31, 2019, when Plaintiff was cleared to go back to work, Plaintiff reached out to the liaison of NSU's Human Resource, requesting to go back to work.

111. Instead of processing Plaintiff's request to go back to work, Defendant scheduled a meeting with Plaintiff on May 23, 2019, during which Plaintiff's employment was terminated.

112. Defendant proposed reasons for Plaintiff's termination not related to her leave under the FMLA, which are pretextual.

113. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its Dean and staff members of College of Nursing.

114. Defendant's conduct was done with malice, and with disregard for Plaintiff's protected rights under the FMLA. Plaintiff is therefore entitled to liquidated damages in an amount equal to his loss of wages/benefits pursuant to the FMLA, 29 U.S.C. § 2617(a).

115. Plaintiff has retained the services of the undersigned counsel and is obligated to pay attorney's fees should he recovers damages from Defendant.

116. Should Plaintiff prevail, Plaintiff is entitled to be awarded reasonable attorney's fees and the costs of this action pursuant to 29 U.S.C. § 2617(a)(3).

WHEREFORE, Plaintiff MICHELLE FERGUSON requests judgment for:

a. Wages, salary, lost benefits, and any other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA, all as provided in 29 U.S.C. § 2617;

b. Interest on the amount found due;

c. Liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

d. Plaintiff's cost of suit herein together with reasonable attorney's fees incurred in this action; and

e. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, MICHELLE FERGUSON hereby demands trial by jury on all counts so triable contained herein.

Dated: September 4, 2020.

LAW OFFICES OF CHARLES EISS, P.L.
Attorneys for Plaintiffs
7951 SW 6th Street, Suite 112
Plantation, Florida 33324
(954) 914-7890 (Office)
(855) 423-5298 (Facsimile)

By:   /s/ Charles M. Eiss
      CHARLES M. EISS, Esq.
      Fla. Bar #612073
      chuck@icelawfirm.com
      TIEXIN YANG, Esq.
      Fla. Bar #1010651
      tiexin@icelawfirm.com
